**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| In re:<br><br>**MIRACLE RESTAURANT GROUP, LLC,**<br><br>Debtor. | CASE NO. 24-11158<br><br>CHAPTER 11<br>SUBCHAPTER V |

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION**

David W. Asbach, Acting United States Trustee for Region 5 (hereinafter, "U.S. Trustee"), by and through his undersigned counsel, hereby files this objection (the "Objection") to the *Third Plan of Reorganization under Subchapter V Dated March 18, 2025* (the "Third Amended Plan") [ECF-275] filed by Miracle Restaurant Group, LLC (the "Debtor"). In support thereof, the U.S. Trustee respectfully states, as follows:

**SUMMARY**

The U.S. Trustee objects to the Debtor's Amended Plan because the Bankruptcy Code does not authorize a plan injunction that would bar a creditor from bringing collection actions against non-debtors for the life of the plan without the express consent of the creditor—up to as many as 3 years. Additionally, the Amended Plan (i) improperly deems non-voting impaired classes as acceptances of the Amended Plan, and (ii) is not fair and equitable, because it provides for the Debtor to retain in cash and capital reserves more than ten times the amount being paid to unsecured creditors and thus cannot be confirmed non-consensually. For these reasons, the Court should decline to confirm the Amended Plan in its current form.

**JURISDICTION AND STANDING**

1.      The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding under 28 U.S.C. § 157(b)(2). The venue of the Debtor's case is

proper under 28 U.S.C. §§ 1408 and 1409.

2. By virtue of the Chapter 11 filing, this case is subject to the supervision and administration of the U.S. Trustee pursuant to 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts.[1]

3. Pursuant to 28 U.S.C. § 586(a)(5) and 11 U.S.C. § 307, the U.S. Trustee has standing to be heard regarding this Objection.

## PROCEDURAL BACKGROUND

4. The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, on June 20, 2024 (the "Petition Date"). [ECF-1]. On the petition, the Debtor sought to proceed under Subchapter V of Chapter 11. *Id*.

5. The Debtor remains in possession and control of its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

6. Dwayne M. Murray was appointed the Subchapter V trustee and continues to serve in this capacity. [ECF-16].

7. The Debtor filed its original Subchapter V Plan of Reorganization on September 18, 2024 [ECF-169], which it then amended on January 31, 2025 [ECF-239], February 18, 2025 [ECF-250], and March 18, 2025 [ECF-275].

8. Generally, the Amended Plan provides for the Debtor to close three of its Arby's franchise stores and pay creditors from the cash flow from operations of the remaining sixteen (16)

---

[1] *See In re Columbia Gas Sys. Inc.*, 33 F.3d 294, 295–96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *In re Wilson*, 413 B.R. 330, 335 (Bankr. E.D. La. 2009) (finding that "the provisions of § 586(a) are intended to compliment the broader grant of power provided by § 307.").

Arby's restaurants. [ECF-275, pp. 4-5]. If the Debtor makes all of its plan payments, it will pay approximately 6.7% of general unsecured claims. *Id.*, p. 9; ECF-275-2.

9. The deadline to file objections to confirmation of the Plan is April 16, 2025. [ECF-259]. Thus, this Objection is timely filed.

## LAW AND ANALYSIS

**A. The Bankruptcy Code Does Not Authorize the Proposed Multi-Year Post-Confirmation Nonconsensual Injunction on Suits Against Non-Debtors.**

10. The Amended Plan contains the following injunction provision:

> Notwithstanding anything contained herein to the contrary, neither the guarantors, insiders, officers, directors, employees, nor the interest holders of the Debtor shall be discharged and released from liability, if any, for claims and debts arising under or in connection with the Debtor or this Subchapter V Case and/or otherwise addressed and/or treated in this Plan. However, absent further Court order upon notice and hearing, the exclusive remedy for payment of any claim or debt addressed in this Plan, so long as the Plan is not in default, shall be the Plan and all parties classified in and under Articles III and IV herein are enjoined from taking any action inconsistent herewith, including, but not limited to, any action to prosecute or collect any debt or claim against any guarantor, insider, officer, director, employee or interest holder; provided however, that all creditors shall retain the right to pursue any third party guarantor for any debts not addressed in this plan and the discharge under 11 U.S.C. § 1192 shall not apply to any third party guarantor. To the extent necessary, any applicable statute of limitations against collection from any third party is specifically tolled from the period of time from the Petition Date until the date upon which the Debtor fails to cure any written notice of default as set forth in the Plan and/or any applicable loan documents. The immediately preceding sentence shall not be construed to apply to a landlord's rights against any party who assigned a lease who may remain liable under the lease under applicable law.

[ECF-275, p. 23]. In other words, for the duration of the Third Amended Plan (up to as many as three years), during which the Debtor is scheduled to make plan payments, an injunction would bar creditors from bringing any collection actions against the Debtor's guarantors, insiders, officers, directors, employees or interest holders on debts addressed by the plan. *Id*. The injunction would lapse only upon (i) the creditor filing and the Court granting permission to proceed with collection against the third parties, or (ii) the Debtor defaulting on the terms of the Third Amended Plan. *Id*. The Debtor has not sought the consent of creditors for this infringement on their rights.

11. As the Fifth Circuit has long held, and as the Supreme Court recently affirmed in *Purdue Pharma*, the Bankruptcy Code does not authorize non-consensual releases of the liability of third parties nor permanent injunctions on actions against non-debtors. *See Harrington v. Purdue Pharma L.P. (In re Purdue Pharma)*, 603 U.S. 204, 227 (2024); *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) (Fifth Circuit law operates "broadly to foreclose non-consensual non-debtor releases and permanent injunctions"); *In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 437-38 (5th Cir. 2022). The only exception is the Code's limited authorization of injunctions in asbestos cases under 11 U.S.C. § 524(g), which does not apply here. *Purdue Pharma*, 603 U.S. at 222 (explaining that "the code does authorize courts to enjoin claims against third parties without their consent, but does so in only one context," asbestos-related bankruptcies).

12. Similarly, there is no provision of the Bankruptcy Code authorizing a *temporary* non-consensual injunction preventing creditors from bringing actions against non-debtors that extends years post-confirmation, and the Debtor has not cited one. Allowing for even a temporary injunction calls upon a bankruptcy court to impermissibly and involuntarily alter relationships between non-debtors without their consent. Here, at least two creditors have objected to the broad third-party release of guarantors, insiders, officers, directors, employees, or interest holders, making clear that the temporary release is contested. [ECF-276, 293]. These released parties have not entered bankruptcy and thus have not shouldered the host of obligations, disclosures, and requirements to apply all assets in exchange for the satisfaction of creditor claims and a three-year injunction. The Bankruptcy Code provides no express authority to release non-participants in the bankruptcy process from personal post-petition liability (even if temporary).

13. First, Section 524(e) explicitly provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such

debt." 11 U.S.C. § 524(e). "The fresh start § 524(e) provides to debtors is not intended to serve th[e additional] purpose" of releasing nondebtors. *Pac. Lumber*, 584 F.3d at 252–53. Section 524(e) "precludes a co-obligor of a bankrupt debtor from piggybacking on rights the debtor enjoys under the Bankruptcy Code, including the right to discharge or restructure indebtedness." *In re Claar Cellars LLC*, 623 B.R. 578, 593 (Bankr. E.D. Wash. 2021) (internal citations and quotation marks omitted). Here, the Debtor seeks in a plan to discharge debt (whether immediately or in the future if confirmed non-consensually) to "affect" the liability of a co-debtor by staying actions against him on that same debt for a period of up to three years, without the consent of affected creditors.[2]

14. The Fifth Circuit, which has long foreclosed non-consensual non-debtor releases and permanent injunctions, recently again clarified its longstanding holdings with its *Highland Capital Mgmt. Fund Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, No. 23-10534, 2025 U.S. App. LEXIS 6320 (5th Cir. Mar. 18, 2025) ("<u>Highland II</u>") decision when it stated, "[e]ven before *Purdue Pharma*, this court had held the same: that any provision that non-consensually releases non-debtors from liability for debts and/or conduct, **and any injunction that acts to shield non-debtors from such liability**, must be struck from a bankruptcy confirmation plan." *Highland II* at *12, citing *Pac. Lumber*, 584 F.3d at 252 (emphasis

---

[2] The Ninth Circuit, which like the Fifth Circuit, has long-standing precedent against nonconsensual non-debtor releases or injunctions, has squarely ruled that such provisions are not permissible. *See In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610 (9th Cir. BAP 1990). In that case, the debtor's proposed plan included an injunction that stated: "[p]ending completion of the [p]lan, creditors shall be restrained and enjoined from foreclosing security interests in property or security of the [d]ebtor or co-debtors of the [d]ebtor, and taking or employing any legal action against the [d]ebtor or a co-debtor of the [d]ebtor." *Id*. at 612. On appeal, the Ninth Circuit BAP reviewed this proposed provision under § 105(a) and, consistent with the Ninth Circuit precedent in *In re Am. Hardwoods, Inc.*, 885 F.2d 621 (9th Cir. 1989) and progeny, noted that § 105(a) did "not authorize relief inconsistent with more specific law."[2] *Id*. at 615. Turning to § 524(e), the BAP noted that the subsection "was a reenactment of Section 16 of the 1898 Act which provided that: [t]he liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." *Id*. at 615-16 (internal citation omitted). The BAP concluded that the proposed plan provision did not comply with § 524(e), noting that although the provision did "not release the co-debtor's from liability, the stay in [the provision] [did] affect the liability of the co-debtors of the debtor as a debt owed by [debtor] to creditor]." 113 B.R. at 616.

added).

15. Pre-*Purdue Pharma*, some courts within this Circuit relied on the Fifth Circuit's decision in *Zale Corp.*, 62 F.3d 746 (5th Cir. 1995), to find that non-consensual temporary post-confirmation injunctions on suits against non-debtors may be permissible. *See In re Seatco*, 257 B.R. 469, 476-77; (Bankr. N.D. Tex. 2001); *In re Bernhard Steiner Pianos USA Inc.,* 292 B.R. 109, 117-18 (Bankr. N.D. Tex. 2002). Those rulings rely on a misinterpretation of *Zale*, rest on a statutory basis that is no longer valid after *Purdue Pharma*, and imposed injunctions far less burdensome than that at issue here.

16. In *Zale*, the Fifth Circuit held that a temporary injunction while the bankruptcy proceeding is pending "may be proper in unusual circumstances."[3] *Id.* at 761. But the Court's examples involved "extensions" of the statutory automatic stay to non-debtor parties. *Id.*[4] The Court did not suggest, much less hold, that post-confirmation nonconsensual injunctions are permissible.

17. At least two district courts have extended *Zale*'s reasoning to justify entering temporary injunctions to protect non-debtors even after bankruptcy proceedings have concluded. *See Seatco*, 257 B.R. at 476; *Steiner*, 292 B.R. at 117. But those decisions relied specifically on *Zale*'s suggestion that the authority for such injunctions derives from § 105(a). *Seatco*, 257 B.R.

---

[3] The *Zale* court identified the "unusual circumstances" as: "1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization." *Zale*, 62 F.3d at 761. There is no evidence that either is applicable here. In any event, the suggestion that "unusual circumstances" can justify a "rare case" exception to the Code's requirements has been soundly rejected by the Supreme Court. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017) ("We cannot alter the balance struck by the statute, not even in "'rare cases.'") (internal quotation marks and citation omitted).

[4] Specifically, the court cited to the following cases: *Patton v. Bearden,* 8 F.3d 343, 349 (6th Cir. 1993) (although the court stated that the automatic stay may be "extended to non-bankrupt parties in 'unusual circumstances,'" to aid reorganization, it declined to issue an injunction prohibiting action against debtor's partners); *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2nd Cir. 1986) (declining to define circumstances under which § 105 power allowed extension of automatic stay to non-bankrupt partners of debtor, but concluding it "cannot extend to efforts made in bad faith by non-bankrupt co-defendants in order to escape from the liability imposed by an adverse district court judgment");

at 476; *Steiner*, 292 B.R. at 117. And as the Supreme Court clarified in *Purdue Pharma*, § 105(a) is not a freestanding basis for nonconsensual non-debtor injunctions. That provision "serves only to 'carry out' authorities elsewhere conferred" in other provisions of the Bankruptcy Code, and that there is no Code section that authorizes nonconsensual releases or injunctions. *Purdue Pharma*, 604 U.S. at 216 n.2; *see also Law v. Siegel*, 571 U.S. 415, 421 (2014) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code") (internal citation omitted). That § 1123(b)(6) of the Code allows plans to include "any other appropriate provision," *Steiner*, 292 B.R. at 117, does not alter the analysis. As *Purdue Pharma* held, § 1123(b)(6) provides no basis for nonconsensual releases and injunctions that impair claims against non-debtors. *Purdue Pharma*, 144 S. Ct. at 2084 ("[P]recisely nothing in § 1123(b) suggests those claims can be bargained away without the consent of those affected, as if the claims were somehow Purdue's own property.")

18. Even on their own terms, the Northern District of Texas decisions do not authorize a nonconsensual, post-confirmation injunction like the one the Debtor asks this Court to impose. In approving post-confirmation injunctions, both *Seatco* and *Steiner* gave weight to the fact that each of the plans at issue provided payment in full of all the affected debts during the injunction period. *Seatco*, 257 B.R. at 477; *Steiner*, 292 B.R. at 118. As a result, the courts appeared to view the harms suffered by creditors from the temporary injunction as having relatively little weight compared to the perceived aid the injunction would provide for a successful reorganization. *Id*. Here, the Debtor's Third Amended Plan does not provide even close to payment in full of all debts affected by its proposed temporary injunction. Rather, unsecured creditors are receiving approximately 6.7% of their claims during the plan period.

**B.    The Third Amended Plan improperly considers non-voting impaired classes be deemed as acceptances of the Third Amended Plan.**

19.   With respect to consensual confirmation under 11 U.S.C. § 1191(a), the Third Amended Plan states that "a creditor class in which no votes are cast will not be considered for purposes of § 1129(a)(8) of the Bankruptcy Code, and this Plan can be confirmed under § 1191(a)."

[ECF-275, p. 12]. As set forth below, this provision is contrary to law and cannot be enforced.

20.   Section 1191(a) of the Bankruptcy Code provides: "[t]he court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met." 11 U.S.C. § 1191(a). Confirmation under Section 1191(a) is referred to as "consensual." *In re M.V.J. Auto World, Inc.*, 661 B.R. 186, 188 (Bankr. S.D. Fla. 2024). Section 1191(b) of the Bankruptcy Code also provides for confirmation, if "all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met. . . if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan. 11 U.S.C. § 1191(b). Confirmation under Section 1191(b) is referred to as "non-consensual." *M.V.J. Auto World,* 661 B.R. at 188.

21.   Section 1129(a)(8) provides: "[w]ith respect to each class of claims or interests— (A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8).

22.   Section 1129(a)(10) provides: "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptances of the plan by any insider." 11 U.S.C. § 1129(a)(10).

23.   For consensual confirmation in a Subchapter V case, the acceptances required by

Sections 1129(a)(8) and (a)(10) are governed by the plain language of Section 1126 of the Code and Fed. R. Bankr. P. 3018(c).

24. Section 1126(a) provides that "[t]he holder of a claim . . . may accept or reject a plan." 11 U.S.C. § 1126(a). Federal Rule of Bankruptcy Procedure 3018(c) states that such acceptance or rejection must be in writing. Fed. R. Bankr. P. 3018(c).

25. The only exception to the general rule that acceptances or rejections must be in writing is set forth in Section 1126(f), which provides that unimpaired classes "are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. § 1126(f).

26. Consequently, a class of claims is either unimpaired—and presumptively deemed to accept the plan—or it may vote in writing to accept or reject the plan. *See* 11 U.S.C. §§ 1126(a), (f), 1129(a)(8).

27. Here, all of the classes (classes 1 through 8) of the Third Amended Plan are impaired classes. [ECF-275, pp. 12-15]. But the Debtor requests that the Court "disregard" any of these classes that do not submit a vote for purposes of determining acceptance under §§ 1129(a)(8) and 1191(a). *Id*. at p. 12. In doing so, the Debtor asks the Court to disregard the plain language of the Bankruptcy Code. Because all classes are impaired, if any such class either (i) votes against the Plan or (ii) does not vote and therefore has not accepted the Plan, this means that the Third Amended Plan cannot be confirmed consensually under Section 1191(a) because it fails to satisfy the requirements of Section 1129(a)(8): that the class accept the Plan if impaired. *See generally, In re Thomas Orthodontics, S.C.*, Case No. 23-25432, 2024 Bankr. LEXIS 2334, *19 (Bankr. E.D. Wis. Sept. 25, 2024) ("a clear majority of courts have held that an impaired class cannot accept a chapter 11 plan by silence"); *In re M.V.J. Auto World*, 661 B.R. at 190 ("Because

each class of impaired claims did not accept the Debtor's Plan, section 1129(a)(8) was not met.") (confirming Subchapter V plan with one accepting impaired class and one non-voting impaired class non-consensually under Section 1191(b) and denying Debtor's request for consensual confirmation under Section 1191(a)); *In re Creason*, 2023 Bankr. LEXIS 478 (Bankr. W.D. Mich. Feb. 23, 2023) (confirming Subchapter V plan with a non-voting impaired class non-consensually under Section 1191(b) and denying Debtor's request for consensual confirmation under Section 1191(a)).

28. Although the Debtor cites two decisions from the Southern District of Texas that held a class where no creditor votes should be disregarded in a subchapter V case,[5] the weight of authority, including the most recent cases to address the issue, have found the conclusions of that case unpersuasive and have held that section 1191(a) requires compliance with section 1129(a)(8), which requires affirmative acceptance by a class. *See, e.g., In re Sushi Zushi of Tex.,* 2025 Bankr. LEXIS 787 at *12 (Bankr. W.D. Tex. Mar. 28, 2025) ("The Debtor must show the class accepts, not merely that the class 'doesn't reject.' Nothing in the Coe allows the Court to equate abstention of a class with acceptance."); *Thomas Orthodontics, S.C.*, 2024 Bankr. LEXIS 2334 at *19 ("The Court concludes that the majority view is more persuasive, particularly considering the express provisions of § 1126."); *In re Florist Atlanta, Inc.*, No. 24-51980, 2024 Bankr. LEXIS 1842, *3 (Bankr. N.D. Ga. Aug. 6, 2024) (declining to adopt the theory and holding "as most courts do, that acceptance for purposes of § 1129(a)(8) requires affirmative acceptance by the class"); *M.V.J. Auto World,* 661 B.R. at 189-90 (extensively criticizing the reasoning of *Franco's Paving* and a related case).

---

[5] *In re Franco's Paving LLC*, 654 B.R. 107 (Bankr. S.D. Tex. 2023) and *In re Hot'z Power Wash, Inc.*, 655 B.R. 107 (Bankr. S.D. Tex. 2023). Note there is also earlier, contrary jurisprudence, *see, In re Castaneda*, No. 09-50101, 2009 WL 3756569 (Bankr. S.D. Tex. Nov. 2, 2009).

29. The court in *M.V.J. Auto World* provides a reasoned and detailed analysis of its disagreement "with the reasoning of the courts in *Hot'z Power Wash* and *Franco's Paving* as the Bankruptcy Code on this point is neither silent nor absurd, but, rather, unambiguous and consistent with the purposes of the Bankruptcy Code." *Id.* at 189. The court referred to the analysis as "quite simple," because, as the statutes set forth above clearly demonstrate, "[i]n order to be consensually confirmed under section 1191(a), the Plan must satisfy section 1129(a)(8) . . . [which] requires that each impaired class accept the plan, and Section 1126(c) provides that acceptance is calculated based on how many holders of allowed claims in the class have voted to accept the plan, not, as was required pre-Bankruptcy Code, based on the number of allowed claims. *Id.* at 189. *Franco's Paving* mistakenly reasoned that Congress did not contemplate a class of claims would not vote when it enacted Section 1126, leaving a void in the statute, but, as the court in *M.V.J. Auto World* recognized, this is contradicted by the plain text of Section 1126(a), which (1) provides that the holder of a claim may accept or reject a plan, rather than a directive that a claimholder shall or must do so; and (2) recognizes that some creditors may ultimately not vote. See 11 U.S.C. § 1126(c) (requiring at least two-thirds in amount and more than one-half in number of claims vote to accept in each class). 661 B.R. at 189-90. Moreover, as the court in *Thomas Orthodontics* added, because section 1126 includes various presumptions, "if Congress intended that a non-voting creditor would be presumed to have accepted the plan, Congress knew how to write that presumption into the statute. Congress did not." 2024 Bankr. LEXIS 2334, *19-20.

30. *Franco's Paving* also noted in its ruling that it found the policy "compelling" behind *In re Ruti-Sweetwater*, 836 F.2d 1263, 1266 (10th Cir. 1988), which adopted a minority position allowing for a plan to be "deemed accepted" by an impaired class. 654 B.R. at 110. That position has been widely criticized outside the Tenth Circuit and conflicts with the express

language of Bankruptcy Rule 3018(c). *See* 7 Collier on Bankruptcy ¶ 1129.02 (16th ed. 2022) ("An unfortunate decision was rendered by the Court of Appeals for the Tenth Circuit which can have the effect, if followed, of setting the law on its ear.") (citing list of decisions rejecting *Ruti-Sweetwater*). Courts within the Southern District of Texas have also declined to follow this minority position. For example, *Castadena* explicitly rejected *Ruti-Sweetwater* and held that an affirmative vote is required, and the rules require the vote to be in writing and to satisfy other formalities. 2009 WL 375669 at *2; *see also In re Pearl Res. LLC*, 622 B.R. 236 (Bankr. S.D. Tex. 2020). Courts confirming plans in subchapter V cases have rejected this approach as well. *See, e.g., Florist Atlanta,* 2024 Bankr. LEXIS 1842 at *3 (Bankr. N.D. Ga. Aug. 6, 2024) (expressly declining to adopt this theory); *Creason*, 2023 Bankr.LEXIS 478 at *2 (finding it is "impossible to reconcile the notion of 'deemed acceptance' with the formal requirements of Rule 3018(c) governing the 'form of acceptance or rejection'").

31. To the extent that policy considerations drove the decision in *Franco's Paving,* the court in *Thomas Orthodontics* emphasized that it "cannot use this policy to contravene the express requirements of the applicable statutes and rules." 2024 Bankr. LEXIS 2334 at*20. The court reasoned that "Nothing in the Bankruptcy Code or rules suggests that the Court can adopt an interpretation of § 1129(a)(8), § 1126, and Rule 3018 that is unique to subchapter V. Perceptions of the purpose of subchapter V should not dictate the interpretation of a provision of general application." *Id.*

32. The outcome of voting on a Subchapter V plan is critical because there are significant differences between a consensual confirmation under §1191(a) and a cramdown under §1191(b). A consensual confirmation under §1191(a) carries significant benefits for the Debtor over a §1191(b) confirmation. These benefits include, *inter alia*, the immediate discharge of debt,

the exemption from the requirement to pay projected disposable income, and the discharge of the subchapter V trustee. To allow the Debtor to claim consensual confirmation based on nonvoting creditors would frustrate the intent of Congress and the Subchapter V statutory scheme by removing much of the incentive for a Subchapter V debtor to win true consensual acceptance of a proposed plan. Importantly, though, if the Debtor does not obtain the acceptance of a class, it does not foreclose relief; the Debtor still retains the option to confirm a plan under § 1191(b) as an alternative if the plan is fair and equitable and does not discriminate unfairly.

33. Accordingly, under the plain language of the Bankruptcy Code and the weight of relevant authority, the Debtor's effort to "not count" any non-voting impaired classes must fail. Instead, Section 1126 applies, and obtaining acceptances is the way to determine whether the plan is consensual or not.

C. **The Third Amended Plan's treatment of general unsecured creditors is not fair and equitable and, thus, it cannot be confirmed non-consensually.**

34. In a Subchapter V non-consensual plan, a bankruptcy court can confirm a Subchapter V plan over the dissent of a class of creditors so long as the plan does not unfairly discriminate and is fair and equitable to the classes of impaired claims that have not accepted the plan. 11 U.S.C. § 1191(b). If confirmed under a cramdown, § 1191(c)(2) applies and requires that the Debtor distribute projected disposable income as of the Effective Date.

35. Here, the Debtor is making the following payments to the unsecured creditor class in Years 1, 2, and 3:

| DISPOSABLE INCOME FOR UNSECUREDS | | 0 | 17,657 | 6,079 | 38,632 |
|---|---|---|---|---|---|
| Total Unsecured Pool | $2,384,886 | | 17,657 | 6,079 | 38,632 |
| Net Non-Priority Unsecured - Schedule EF *(excl Arby's & Leases)* | $887,232 | | | | |
| Arby's Claims for Closed Stores | $155,537 | | | | |
| Arby's Settlement Claim *(for Closed stores)* | $442,731 | | | | |
| Landlord Claims for Closed Stores | $899,386 | | | | |

[ECF-275-2].

36. This projected disposable income comes after the Debtor deducted a Working Capital Reserve (10% of cash flow, or $75,156 to $81,899 per year) and Maintenance Reserve ($160,000 per year), as well as keeping $300,000 in cash on hand from year to year. *Id*. The amount kept on hand each year greatly exceeds what is being paid to general unsecured creditors under the Third Amended Plan by more than ten times.

37. It is the Debtor's burden to show the court that plan projections are credible, and the plans treatment of disposable income is "fair and equitable". *In re Premier Glass Services, LLC,* 664 B.R. 465 (Bankr. N.D. Ill. 2024). Here, the Debtor is reserving at least $535,000 each year from unsecured creditors, who are only receiving a 6.7% payout on their claims. This amount appears excessive for a "payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor." *See In re Trinity Family Practice & Urgent Care PLLC*, 661 B.R. 793, 808-809 (Bankr. W.D. Tex. 2024) (plan not fair and equitable where capital reserve was high in a plan proposing to pay 8.2% to unsecured creditors).

38. Accordingly, the Third Amended Plan cannot be confirmed non-consensually.

## CONCLUSION

39. The Debtor's current Plan does not comport with the requirements of the Bankruptcy Code. For the reasons detailed above, the Court should deny confirmation of this Plan.

**WHEREFORE**, the United States Trustee prays that this Honorable Court consider this Objection and award all general and equitable relief to which justly entitled in the premises.

Dated: April 16, 2025

Respectfully submitted,
DAVID W. ASBACH
Acting United States Trustee
Region 5, Judicial Districts of
Louisiana and Mississippi

by: *s/Amanda B. George*
AMANDA B. GEORGE (#31642)
Acting Assistant U.S. Trustee
Office of the U.S. Trustee
600 S. Maestri Place, Suite 840-T
New Orleans, LA 70130
Telephone no. (504) 589-4018
Direct no. (504) 589-4092
Amanda.B.George@usdoj.gov

## **CERTIFICATE OF SERVICE**

This is to certify that copies of the foregoing Objection to Confirmation was served on April 16, 2025 by Notice of Electronic Filing through the court's CM/ECF electronic notification system on the parties listed below:

Alberta Adams on behalf of Interested Party The Travelers Indemnity Company
aadams@pdtlegal.com

H. Kent Aguillard on behalf of Creditor Mavro-Windsor AR TX LLC
kent@aguillardlaw.com, germaine@aguillardlaw.com;caleb@aguillardlaw.com

H. Kent Aguillard on behalf of Creditor Miller AR TX Management LLC
kent@aguillardlaw.com, germaine@aguillardlaw.com;caleb@aguillardlaw.com

Kennedy Bodnarek on behalf of Creditor McLane Foodservice, Inc.
kennedy.bodnarek@alston.com

Joseph Patrick Briggett on behalf of Creditor B&B Developers, LLC
jbriggett@bakerdonelson.com, jbowers@bakerdonelson.com

Greta M. Brouphy on behalf of Debtor Miracle Restaurant Group LLC
gbrouphy@hellerdraper.com, vgamble@hellerdraper.com

David Browne on behalf of Creditor Iris Associates, LP
dbrowne@brownelaw.com

Christopher T. Caplinger on behalf of Interested Party Robert & Son Inc.
ccaplinger@lawla.com, mlopez@lawla.com

Donald G. Cassels, III on behalf of Creditor Schwegmann Family Trust #2
donald.cassels@wilsonelser.com

Rudy J. Cerone on behalf of Creditor David Anson
rcerone@mcglinchey.com, lgraff@mcglinchey.com

Rudy J. Cerone on behalf of Creditor Renae Jacobs
rcerone@mcglinchey.com, lgraff@mcglinchey.com

Scott R. Cheatham on behalf of Creditor Edna Sue Moody
scott.cheatham@arlaw.com

Scott R. Cheatham on behalf of Creditor Edward Summers
scott.cheatham@arlaw.com

Scott R. Cheatham on behalf of Creditor Ernest Summers, III
scott.cheatham@arlaw.com

Scott R. Cheatham on behalf of Creditor John C. Leigeber
scott.cheatham@arlaw.com

William G. Cherbonnier, Jr. on behalf of Creditor Iris Associates, LP
wgc@billcherbonnier.com, caludagroupllc@jubileebk.net

Cynthia Cimino on behalf of Creditor Iris Associates, LP
cynthiamcimino@gmail.com, ccimino@brownelaw.com

Richard Crohan on behalf of Creditor Arbys Franchisor, LLC
blake.crohan@alston.com

Richard Crohan on behalf of Creditor McLane Foodservice, Inc.
blake.crohan@alston.com

Douglas S. Draper on behalf of Debtor Miracle Restaurant Group LLC
ddraper@hellerdraper.com, vgamble@hellerdraper.com

William T. Finn on behalf of Creditor Woodvine Partners, LLC
finn@carverdarden.com

Patrick S. Garrity on behalf of Creditor 1000 W Esplanade, LLC
pgarrity@derbeslaw.com, 23689@notices.nextchapterbk.com

Patrick S. Garrity on behalf of Creditor 1616 E. Lake Mead, LLC
pgarrity@derbeslaw.com, 23689@notices.nextchapterbk.com

Patrick S. Garrity on behalf of Creditor Kirk Three, LLC
pgarrity@derbeslaw.com, 23689@notices.nextchapterbk.com

Patrick S. Garrity on behalf of Creditor Harvey Les
pgarrity@derbeslaw.com, 23689@notices.nextchapterbk.com

Amanda Burnette George on behalf of U.S. Trustee Office of the U.S. Trustee
Amanda.B.George@usdoj.gov

Douglas J. Harris on behalf of Creditor Arbys Franchisor, LLC
douglas.harris@alston.com

Jeffrey M Hendricks on behalf of Creditor First Franchise Capital Corporation
jhendricks@brickergraydon.com

Evan Park Howell, III on behalf of Creditor Janana, L.L.C.
ehowell@ephlaw.com

Henry A. King on behalf of Creditor First Franchise Capital Corporation
hking@kingjurgens.com

Michael E. Landis on behalf of Debtor Miracle Restaurant Group LLC
mlandis@hellerdraper.com, Vgamble@hellerdraper.com

Leib M Lerner on behalf of Creditor Arbys Franchisor, LLC
leib.lerner@alston.com

J. Eric Lockridge on behalf of Creditor The Deville Group of Companies, as agent for RDZ Family Limited Partnership III and RD Investment Partners I, LP
eric.lockridge@keanmiller.com, stephanie.gray@keanmiller.com;eric-lockridge-9072@ecf.pacerpro.com

Robert L. Marrero on behalf of Creditor Douglas Cook Enterprises, LLC
office@bobmarrero.com, robert@bobmarrero.com;Marrero.RobertR106702@notify.bestcase.com

Laura J Monroe on behalf of Creditor Lubbock Central Appraisal District
lmbkr@pbfcm.com

Dwayne M. Murray
dmm@murraylaw.net, la18@ecfcbis.com;trustee3@murraylaw.net

Richard A Rozanski on behalf of Creditor CLECO Power, LLC
richard@rarlaw.net

Michael D. Rubenstein on behalf of Creditor USRP Funding 2001-A, LP
mdrubenstein@liskow.com, lschnabel@Liskow.com

Glenn K. Schreiber on behalf of Creditor Small Business Administration
glenn.schreiber@usdoj.gov, bonnie.bodenheimer@usdoj.gov;caseview.ecf@usdoj.gov;Vanessa.brown@usdoj.gov

Jessica M. Simon on behalf of Creditor USRP Funding 2001-A, LP
jsimon@hrhlaw.com

Office of the U.S. Trustee
USTPRegion05.NR.ECF@usdoj.gov

David F. Waguespack on behalf of Creditor Woodvine Partners, LLC
waguespack@carverdarden.com, docket@carverdarden.com;plaisance@carverdarden.com

                                  By: */s/ Amanda B. George*
                                  AMANDA B. GEORGE
                                  Acting Assistant U.S. Trustee
                                  La. Bar # 31642