IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| MIRACLE RESTAURANT GROUP, LLC | § | Case No. 24:11158 |
| | § | |
| Debtor | § | Subchapter V |

## OMNIBUS RESPONSE TO OBJECTIONS TO DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

**NOW INTO COURT**, through undersigned counsel, comes Miracle Restaurant Group, LLC (the "Debtor") who files this Omnibus Response to the following objections received to the Debtor's *Third Amended Plan of Reorganization Under Subchapter V Dated March 18, 2025* [ECF Doc. 275] (the "Plan"):

- *Iris Associates L.P.'s Objection to Confirmation of the Debtor's Third Amended Plan of Reorganization Under Subchapter V Dated March 18, 2025* [ECF Doc. 276] (the "Iris Objection");

- *Objection to Confirmation* [ECF Doc. 277] (the "Janana Objection") filed by Janana, LLC;

- *Objection of David Anson and Renae Lee Jacobs to Confirmation of Amended Subchapter V Plan of Reorganization and Response to Cramdown Motion filed by the Debtor* [ECF Doc. 288] (the "Des Plaines Landlord Objection");

- *Joinder in Objection to Confirmation of Debtor's Third Amended Plan of Reorganization* [ECF Doc. 292] (the "Woodvine Joinder") filed by Woodvine Partners, LLC ("Woodvine");

- *United States Trustee's Objection to Confirmation* [ECF Doc. 294] (the "UST Objection"); and

- *Louisiana Department of Revenue's Objection to Debtor's Third Amended Plan of Reorganization Under Subchapter V Dated March 18, 2025* [ECF Doc. 296] (the "LDR Objection")

Collectively, the above shall be referred to as the "Objections").

Given the overlapping nature of the Objections, it seems more prudent to address the Objections issue by issue as opposed to going through each Objection separately. However, as a preliminary matter, the Debtor will provide a brief summary of the Objections.

{00383380-1}  1

## BACKGROUND

1. On March 18, 2025, following months of negotiations with various vendors, landlords, and Arby's, the Debtor filed the fourth iteration of its Plan.

2. Shortly thereafter the Objections were filed in response.

3. The Iris Objection, along with the Woodvine Joinder, objects to the Plan on the basis that it contains a nonconsensual third-party release. For the reasons below, the Plan is expressly **not** providing a nonconsensual release to any third parties in violation of *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 144 S. Ct. 2071 (2024), nor is it implementing an overly broad "Gatekeeper Provision" in violation of *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 132 F.4th 353 (5th Cir. 2025).

4. The Janana Objection concerns the treatment of the cure payments owed to Janana from the assumption of the lease agreement with Janana for the property located in Metairie, Louisiana. Counsel for Janana and the Debtor have conferred and come to an agreement, rendering the Janana Objection moot. The parties will inform the Court of the agreement at the Confirmation Hearing set for April 23, 2025.

5. The Des Plaines Landlord Objection concerns the treatment of their administrative expense claim granted to the Des Plaines Landlord per this Court's March 20, 2025, Order [ECF Doc. 282]. The Debtor has fully addressed this Objection in its *Motion to Enforce Settlement and Reconsider Administrative Claim of David Anson and Renae Lee Jacobs Pursuant to 11 U.S.C. § 502(j)* [ECF Doc. 308] (the "Motion to Reconsider Claim"). The Debtor fully adopts and incorporates the arguments made in the Motion to Reconsider Claim herein.

6. The UST Objection concerns: 1) the temporary injunction provision provided in Article X of the Plan; 2) the treatment in the Plan of non-voting classes; and 3) the retention of

cash and capital reserves in the Plan. The Debtor will address the objection to the temporary injunction along with the Iris/Woodvine Objection. The treatment of non-voting classes is moot given that Woodvine voted against the Plan, thereby forcing the Plan to be confirmed pursuant to 11 U.S.C. 1191(b). Lastly, as to the retention of cash and capital reserves, the Debtor will submit the testimony of Michael Elliott and Donald Moore in support of the cash reserve included in the Plan's projections.

7. The Louisiana Department of Revenue ("LDR") objected on several grounds, mostly concerning the treatment of the LDR's administrative expense claim for post-petition sales and withholding taxes. The Debtor's counsel and counsel for the LDR have been in extensive discussions and with the cooperation of the LDR and the Debtor's representatives, the Debtor believes that all issues have been resolved or are resolvable. In the event that the Debtor and the LDR are unable to fully resolve their issues, the Debtor will rely on the testimony of Elizabeth Moore, as the Controller for the Debtor to support the Debtor's assertion that all post-petition taxes are paid and current. The LDR also objected to the Plan on the basis that section 347(a) of the Bankruptcy Code was not adhered to in the Plan. In response, the Debtor points to Section 9.13 of the Plan, that expressly includes the language from section 347(a).

## LAW AND ARGUMENT

8. The one remaining issue, aside from the Des Plaines Landlord Objection, which is addressed in the Debtor's Motion to Reconsider Claim, is the provision contained in Article X of the Plan that provides for a _temporary_ injunction against any creditors seeking to collect from third party guarantors of any claim that is addressed in the Plan of Reorganization.

9. Article X provides, in relevant part, that:

> [A]bsent further Court order upon notice and hearing, the exclusive remedy for payment of any claim or debt addressed in this Plan, so

long as the Plan is not in default, shall be the Plan and all parties classified in and under Articles III and IV herein are enjoined from taking any action inconsistent herewith, including, but not limited to, any action to prosecute or collect any debt or claim against any guarantor, insider, officer, director, employee or interest holder; provided however, that all creditors shall retain the right to pursue any third party guarantor for any debts not addressed in this plan and the discharge under 11 U.S.C. § 1192 shall not apply to any third party guarantor. To the extent necessary, any applicable statute of limitations against collection from any third party is specifically tolled from the period of time from the Petition Date until the date upon which the Debtor fails to cure any written notice of default as set forth in the Plan and/or any applicable loan documents. The immediately preceding sentence shall not be construed to apply to a landlord's rights against any party who assigned a lease who may remain liable under the lease under applicable law.[1]

10. The above provision shall be referred to herein as the "_Injunction Provision_."

11. Broken down, the Injunction Provision provides that if a claim is directly addressed in the Plan, then the holder of the claim cannot seek to enforce any guarantee of that claim so long as the Plan is not in default. If a claim is not addressed in the Plan, then the injunction does not apply. The Injunction Provision expressly states that "all creditors shall retain the right to pursue any third party guarantor for any debts not addressed in this plan."

12. By way of example, if a creditor has a $50,000 claim against the Debtor that is also guaranteed by a third party and the Plan only provides for payment of $10,000 to that creditor, nothing would prevent the creditor from pursuing the guarantor for the $40,000 not addressed in the Plan.

13. Further, if a third party has a tort claim against any guarantor separate and apart from the guarantee, nothing in the Injunction Provision would prevent that third party from bringing the tort claim against the guarantor.

---

[1] Plan at Article X, p. 23.

{00383380-1}  4

**A. Temporary Injunctions Are Permitted in the Fifth Circuit and Do Not Violate 11 U.S.C. § 524(e)**

14. The Injunction Provision also does not provide for any "release" or discharge or any third parties. In fact, the Injunction Provision expressly states that the discharge under section 1192 of the Bankruptcy Code shall not apply to any third party guarantor.

15. Such temporary and limited injunctions are not uncommon and have been ratified in numerous other cases both within the Fifth Circuit and in other jurisdictions. The Fifth Circuit laid out the standard for granting temporary injunctions as follows:

> The impropriety of a permanent injunction does not necessarily extend to a temporary injunction of third-party actions. . . . Such an injunction may be proper under unusual circumstances. These circumstances include 1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization. When either of these circumstances occur, an injunction may be warranted.

*Feld v. Zale Corp. (in Re Zale Corp.)*, 62 F.3d 746, 761 (5th Cir. 1995) (citations omitted).

16. In this case, both standards are met. The insiders included in the temporary injunction are Donald Moore, Robert Miller, individually, Mr. Miller's affiliated companies, Captec Financial Holdings, Corp. ("Captec"), and Patrick Beach who is both the CEO of Captec and serves as manager on the Debtor's Board of Managers (collectively, the "Insiders").[2] The Insiders all provide significant financial support to the Debtor both in the form of capital contributions and guarantees. Without them, the Debtor would cease to be. Mr. Moore is the CEO of the Debtor and will be responsible for the implementation of the Plan. Mr. Miller, Captec, and Mr. Beach are also essential to a successful reorganization. Without their financial backing, the refinancing at the end of the three-year term of the Plan with a new loan to make a balloon payment

---

[2] See *Declaration of Donald Moore in Support of Plan of Reorganization Under Subchapter V Dated April 21, 2025* [ECF Doc. 307-3] (the "Moore Declaration") at ¶ 18.

{00383380-1} 5

on all outstanding amounts would be hard, if not impossible to obtain. Hence, the Insiders all have an identity of interests with the Debtor and any third party action to collect against a guaranty would endanger the reorganization by taking attention away from the Plan implementation and endangering the balloon payment at the end of the Plan.

17. Following *Zale*, Judge Houser of the Bankruptcy Court for the Northern District of Texas considered nearly identical language as what is being proposed in this case. Judge Houser summarized the injunction provision in the plan as follows:

> [The temporary injunction] only restrains CIT from its efforts to collect from Kester pursuant to the Guaranty those amounts being paid to CIT under the Further Modified Plan. If the Further Modified Plan is confirmed, CIT is free to pursue Kester on the Guaranty for any amounts owing to it that are not being paid under the Plan, in one suit or from time to time, and, if the Debtor defaults on its plan payments to CIT after notice and an opportunity to cure, CIT may pursue Kester on the Guaranty for all amounts owing to it without further order of the Court. The temporary injunction expires on its own upon an uncured default.

*In re Seatco, Inc.*, 259 B.R. 279, 283-84 (Bankr. N.D. Tex. 2001).

18. Judge Houser confirmed the plan, holding that "the Further Modified Plan does not violate § 524(e) of the Bankruptcy Code. The proposed temporary injunction against CIT is necessary and appropriate to carry out the provisions of the Bankruptcy Code. The only harm to CIT from confirmation of the Further Modified Plan is that CIT would be forced to accept payment terms that it finds unacceptable. Although the payment terms are not to its liking, CIT's allowed secured claim against the Debtor is being paid in full." *Id.* at 284.

19. The same can be said in this case. Woodvine has joined with Iris on the grounds that it does not want to wait to collect under Plan terms. Woodvine is being paid in full under the Plan, just not as fast as it would like. Woodvine has a guaranty against Robert Miller, who is a

partial owner of the Debtor and who provides significant capital support for the Debtor.[3] Mr. Miller's support, along with the other Insiders is essential to a successful reorganization. The Insiders, as partial owners, have always provided capital support to the Debtor along with guarantying obligations of the Debtor. Without their support, the Debtor would be hamstrung to find the funding envisioned at the end of the three-year term of the Plan. As such, the Injunction Provision is an essential part of the Plan and does not unduly prejudice any creditors.

20. Following *Seatco*, Judge Hale issued an opinion in *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109 (Bankr. N.D. Tex. 2002). Judge Hale cited to both *Zale* and *Seatco* with approval and found that the injunction in that case 1) was temporary; 2) did not affect the guarantor's ultimate liability under the guarantee; 3) allowed for enforcement of the guarantee upon default under the plan; and 4) would have an adverse effect on all other parties should the principal be subjected to claims that were otherwise addressed in the plan. *Id.* at 117. Further, the court noted that the objecting creditors were being paid in full. *Id.* The same is true with respect to Woodvine. Woodvine is being paid in full under the Plan.

21. As to Iris, the Iris Objection indicates that Iris "retains potential tort claims against at least one of the Debtor's insiders, officers, and/or directors." Nothing in the Injunction Provision would bar such claims from going forward. Iris's concerns are unfounded.

**B. Temporary Injunctions Are Not Prohibited by *Purdue Pharma***

22. The Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 144 S. Ct. 2071 (2024), confirmed what was already true in the Fifth Circuit. Nonconsensual third party releases are prohibited. Following *Purdue*, other courts have already faced the issue facing

---

[3] See *Declaration of Donald Moore in Support of Plan of Reorganization Under Subchapter V Dated April 21, 2025* [ECF Doc. 307-3] (the "Moore Declaration") at ¶ 18.

this Court: can a plan of reorganization still contain a temporary injunction against enforcing guarantees of principals of the debtor?

23. In *Coast to Coast Leasing, LLC v. M&T Equip. Fin. Corp. (In re Coast to Coast Leasing, LLC)*, 661 B.R. 621, 625 (Bankr. N.D. Ill. 2024), the Bankruptcy Court for the Northern District of Illinois held that "granting a preliminary injunction based on a finding that the debtor is likely to succeed in this sense (which is how bankruptcy courts that have entered such preliminary injunctions have typically described the basis for doing so) does not depend at all on the principle rejected by *Purdue Pharma* that a bankruptcy court may grant a non-consensual third-party release." *Id.* at 624 (quoting *In re Parlement Techs., Inc.*, 2024 Bankr. LEXIS 1627, 2024 WL 3417084, slip op. at *1).

24. The court then went forward with the Seventh Circuit standard for granting temporary injunctions against state court litigation over third party guarantees: (1) when such proceedings defeat or impair the bankruptcy court's jurisdiction over the case before it; (2) the moving party has established a likelihood of success on the merits; and (3) the court must consider whether the injunction will harm the public interest. *Id.* at 625. The court found that all three were met. "[T]he Debtor's principals intend to fund the plan, and their credit will play a vital role in the reorganization efforts. The state court lawsuits could impair this court's jurisdiction to assist the Debtor to reorganize, since the source of funds to assist the reorganization could be jeopardized." *Id.* Second, "the Debtors' principals have previously contributed their time, energy and money to the Debtors and can continue contributing their time, energy and money to the Debtors' future reorganization efforts." *Id.* at 626. Lastly, "temporarily staying the state court lawsuits at issue serves the public interest. The temporary stay may foster the Debtor's reorganization." *Id.* All three statements could be said about the instant Plan and the Injunction Provision contained therein.

### C. *Highland Capital Mgmt.* Is Not Applicable to This Case

25. The Fifth Circuit's recent decision in *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 132 F.4th 353 (5th Cir. 2025), concerned an overly broad gatekeeper provision. In that case, the court had already struck down an overly broad exculpation provision that extended to parties beyond what the *Barton* doctrine protects. *See, In re Highland Cap. Mgmt., L.P. (Highland I)*, 48 F.4th 419 (5th Cir. 2022). The issue in *Highland II* was an injunction in the form of a gatekeeper provision requiring any claim sought against the so-called "protected parties" to be approved by the bankruptcy court first. The protected parties were even broader than parties that were previously included in the exculpation provision. *Highland II* at *6. The Fifth Circuit made clear that "we have never extended the *Barton* doctrine to give bankruptcy courts gatekeeping power over claims against non-debtors." *Id.* at *14. Concluding that the gatekeeper provision was overly broad, the court made the following observation:

> The clear weight of Supreme Court and Fifth Circuit precedent dictates our holding: that a proper reading of *Highland I* requires that the definition of "Protected Parties" used in the Plan's Gatekeeper Clause be narrowed coextensively with the definition of "Exculpated Parties" used in the Exculpation Provision. Any other reading of *Highland I* would improperly grant the bankruptcy court authority to enforce what is perhaps the broadest gatekeeper injunction ever written into a bankruptcy confirmation plan. Such authority is patently beyond the power of an Article I court under § 105.

*Id.* at *19.

26. The Injunction Provision contained in the Debtor's Plan is not a gatekeeping provision at all, much less rising to the level of "perhaps the broadest gatekeeper injunction ever written into a bankruptcy confirmation plan." No permission is needed from the Court to pursue

claims that are not otherwise addressed in the Plan, such as tort claims or claims that are not being paid in full under the Plan.

## CONCLUSION

27. In an effort to resolve any ambiguity as to the limited scope of the Injunction Provision, the Debtor has proposed the following language to be included in a confirmation order from this Court.

> **Injunction and Discharge**. Except as otherwise expressly provided in the Plan or in this Order, as of the Effective Date, (i) the Debtor shall be discharged from any debt to the fullest extent provided by 11 U.S.C. § 1141(d), and (ii) all holders of any discharged claims against the Debtor are enjoined from enforcing any such claim to the fullest extent provided by 11 U.S.C. § 524(a). Further, all holders of discharged claims against the Debtor are enjoined from taking any action to prosecute or collect any debt or claim, which is specifically addressed within the Plan, against any guarantor, insider, officer, director, employee, or interest holder; *provided, however*, that all creditors shall retain the right to pursue any third party guarantor, insider, officer, director, employee, or interest holder for any claims *not* addressed in the Plan and such third party guarantors, insiders, officers, directors, employees, or interest holders shall not be entitled to the benefits of the discharge provided herein. Furthermore, any applicable statute of limitations against collection from any third party is specifically tolled from the period of time from the Petition Date until the date upon which the Debtor fails to cure any written notice of default as set forth in the Plan and/or any applicable loan documents.

28. While some creditors have agreed to it, Woodvine, Iris, and the UST have not. The Debtor remains open to any other clarifying language that would limit the temporary injunction to just claims addressed in the Plan.

**WHEREFORE**, the Debtor respectfully requests that the Court confirm the *Debtor's Third Amended Plan of Reorganization Under Subchapter V Dated March 18, 2025,* and grant such other relief as is just and necessary.

Respectfully submitted:

/s/Michael E. Landis
Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
Michael E. Landis, La Bar No. 36542
mlandis@hellerdraper.com
Heller, Draper & Horn, L.L.C.
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Fax: (504) 299-3399

*Counsel for Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be served through this Court's ECF Noticing System on April 22, 2025, upon the following:

- **Alberta Adams**   aadams@pdtlegal.com
- **H. Kent Aguillard**   kent@aguillardlaw.com, germaine@aguillardlaw.com;caleb@aguillardlaw.com
- **Kennedy Bodnarek**   kennedy.bodnarek@alston.com
- **Florence Bonaccorso-Saenz**   FBS-ECFNotices@la.gov
- **Joseph Patrick Briggett**   jbriggett@bakerdonelson.com, jbowers@bakerdonelson.com
- **Greta M. Brouphy**   gbrouphy@hellerdraper.com, vgamble@hellerdraper.com
- **David Browne**   dbrowne@brownelaw.com
- **Christopher T. Caplinger**   ccaplinger@lawla.com, mlopez@lawla.com
- **Donald G. Cassels**   donald.cassels@wilsonelser.com

- **Rudy J. Cerone**     rcerone@mcglinchey.com, lgraff@mcglinchey.com
- **Scott R. Cheatham**     scott.cheatham@arlaw.com
- **William G. Cherbonnier**     wgc@billcherbonnier.com, caludagroupllc@jubileebk.net
- **Cynthia Cimino**     cynthiamcimino@gmail.com, ccimino@brownelaw.com
- **Richard Crohan**     blake.crohan@alston.com
- **Douglas S. Draper**     ddraper@hellerdraper.com, vgamble@hellerdraper.com
- **William T. Finn**     finn@carverdarden.com
- **Patrick S. Garrity**     pgarrity@derbeslaw.com, 23689@notices.nextchapterbk.com
- **Amanda Burnette George**     Amanda.B.George@usdoj.gov
- **Olivia Greenberg**     ogreenberg@joneswalker.com, olivia-obrien-9200@ecf.pacerpro.com
- **Douglas J. Harris**     douglas.harris@alston.com
- **Jeffrey M Hendricks**     jhendricks@brickergraydon.com
- **Evan Park Howell**     ehowell@ephlaw.com
- **Henry A. King**     hking@kingjurgens.com
- **Michael E. Landis**     mlandis@hellerdraper.com, Vgamble@hellerdraper.com
- **Leib M Lerner**     leib.lerner@alston.com
- **J. Eric Lockridge**     eric.lockridge@keanmiller.com, stephanie.gray@keanmiller.com;eric-lockridge-9072@ecf.pacerpro.com
- **Robert L. Marrero**     office@bobmarrero.com, robert@bobmarrero.com;Marrero.RobertR106702@notify.bestcase.com
- **Laura J Monroe**     lmbkr@pbfcm.com
- **Dwayne M. Murray**     dmm@murraylaw.net, la18@ecfcbis.com;trustee3@murraylaw.net
- **Richard A Rozanski**     richard@rarlaw.net
- **Michael D. Rubenstein**     mdrubenstein@liskow.com, lschnabel@Liskow.com
- **Glenn K. Schreiber**     glenn.schreiber@usdoj.gov, bonnie.bodenheimer@usdoj.gov;caseview.ecf@usdoj.gov;Vanessa.brown@usdoj.gov
- **Jessica M. Simon**     jsimon@hrhlaw.com
- **Office of the U.S. Trustee**     USTPRegion05.NR.ECF@usdoj.gov
- **David F. Waguespack**     waguespack@carverdarden.com, docket@carverdarden.com;plaisance@carverdarden.com

        */s/ Michael E. Landis*
        Michael E. Landis