UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 24-11158 |
| | § | |
| MIRACLE RESTAURANT GROUP, LLC, | § | CHAPTER 11 (SUBCHAPTER V) |
| | § | |
| | § | SECTION A |
| DEBTOR. | § | |

**MEMORANDUM ORDER AND OPINION**

The Debtor in this case is a Delaware limited liability company that, as of the Petition Date, operated 25 Arby's franchises in Illinois, Indiana, Texas, Mississippi, and Louisiana. The Debtor leases each Arby's location and does not own any real property. After experiencing inflationary pressures in both commodity and labor expenses in the years following the COVID-19 pandemic, the Debtor sought bankruptcy relief under Subchapter V of Chapter 11 of the Bankruptcy Code on June 20, 2024. Over the course of the Debtor's bankruptcy case, the Debtor closed six restaurants, rejected unexpired leases and franchise agreements associated with those restaurants, and attempted to market and sell other of its restaurant franchises without success.[1] The Debtor was able to renegotiate leases and obtain lease concessions from landlords at nine locations and plans to continue to operate its franchises at those locations, which will generate income to fund a plan of reorganization.

On April 23, 2025, this Court held an evidentiary hearing to consider confirmation of the *Debtor's Plan of Reorganization Under Subchapter V Dated September 18, 2024*, [ECF Doc. 169], as amended, [ECF Docs. 239, 250 & 275], (the "Plan") (Debtor Ex. 1). Without objection, the

---

[1] Although the court-approved sales process did not bear fruit, the Debtor recently proposed the sale of its license agreement, leasehold interests, and inventory in one of its restaurant franchises located in Pearl River, Louisiana, to the current lessor of that location. [ECF Doc. 279]. That sale has been approved by this Court and is contingent upon the Debtor obtaining an Order confirming its Plan.

Court admitted as evidence the declarations of Donald Moore, the Chief Executive Officer and managing member of the Debtor (Debtor Ex. 6), as well as Michael Elliot, founder and managing partner of Peak Franchise Capital (Debtor Ex. 5). The Court qualified Elliot as an expert in financial restructuring of quick-service restaurants and heard testimony from both Moore and Elliot. In support of its Plan, the Debtor also relied upon the Certification of Tabulation of Ballots, which evidenced that, of the classes of creditors that voted, all voted to accept the Plan but for Woodvine Partners, LLC ("Woodvine"), an unsecured creditor of the Debtor, which voted to reject the Plan. [ECF Doc. 306].

Several parties in interest objected to the Plan, [ECF Docs. 276, 277, 288, 293, 294 & 296]. As of the confirmation hearing, the Debtor had resolved the vast majority of the objections and those objections were withdrawn. For the reasons stated on the record, upon review of the evidence, the Court found that the Debtor's Plan satisfied all of the confirmation requirements of § 1129(a) of the Bankruptcy Code, as incorporated by § 1191. The Court continued the confirmation hearing to April 30, 2025, to consider the final remaining objection to the Plan lodged by the Office of the United States Trustee ("UST"), Iris Associates, L.P. ("Iris"), and Woodvine. This *Memorandum Opinion and Order* solely addresses the remaining objection.[2]

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). The contested matter is a "core proceeding" under 28 U.S.C. § 157(b)(2)(L) that this Court may hear and determine on a final basis. The venue of the Debtor's bankruptcy case is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2] An Order containing findings of fact and conclusion of law, confirming the Plan, and incorporating this ruling will be entered separately.

**DISCUSSION**

For confirmation purposes in Subchapter V cases, § 1191(a) of the Bankruptcy Code incorporates the requirements of § 1129(a), and provides that a plan shall be confirmed if all of the § 1129(a) requirements are met, but for § 1129(a)(15).[3] If a plan is not fully consensual, however, a debtor may nevertheless confirm a plan if it can show the requirements of § 1191(b) are met; that is, a debtor must show that all requirements of § 1191(a) are met (but for §§ 1129(a)(8) and (a)(10))[4] and show that "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1191(b).

No party in interest objected on the basis of unfair discrimination or asserted that the Plan was not fair and equitable as to any class of creditors. Woodvine, the only creditor in Class 3, holds an allowed unsecured claim of $787,916.66 for amounts due under a promissory note.[5] Under the Plan, Woodvine's Class 3 claim will be amortized over seven years at 5.0% interest, and Woodvine will receive monthly payments in the amount of $11,136.34 with a balloon payment

---

[3]     Section 1129(a)(15) deals with individual debtors and is not applicable here.

[4]     Section 1129(a)(8) is a "unanimity" requirement for confirmation under § 1129(a): each class of creditors must either accept the plan or not be impaired under it. Section 1129(a)(10) requires that at least one impaired class of creditors (excluding insiders) must vote to accept a plan in order for the plan to be confirmed. "One presumed reason for [§ 1129(a)(10)] is the reasonableness of requiring some degree of creditor support for a plan that is to be involuntarily imposed on another group of creditors," *In re 7th Street & Beardsley P'ship*, 181 B.R. 426, 431 (Bankr. D. Ariz. 1994), although "the scant legislative history on § 1129(a)(10) provides virtually no insight as to the provision's intended role," *W. Real Estate Equities, L.L.C. v. Vill. at Camp Bowie I, L.P. (In re Vill. at Camp Bowie I, L.P.)*, 710 F.3d 239, 245 (5th Cir. 2013) (citation omitted).

[5]     In February 2023, the Debtor applied to the Internal Revenue Service for Employee Retention Tax Credits ("ERTC") refunds for the first three quarters in 2021 in the approximate total amount of $3.5 million. On December 5, 2023, after experiencing a delay in receiving the ERTC refunds, the Debtor executed a promissory note with Woodvine in the principal amount of $750,000 with a maturity date of June 30, 2024. That note subordinates Woodvine to all other obligations owed by the Debtor to First Franchise Capital, a first-position lienholder. *See* Plan, §§ 1.2, 1.3 & 1.5. Woodvine is entitled by be paid from ERTC funds when those funds are remitted to the Debtor.

of $486,573 at the end of the three-year Plan term. *See* Plan, Art. V. The Court finds that the Plan satisfies the requirements of 11 U.S.C. §§ 1191(b) and (c) as the Plan does not discriminate unfairly, and is fair and equitable with respect to Woodvine.[6]

Article X of the Plan contains the following clause:

> Notwithstanding anything contained herein to the contrary, neither the guarantors, insiders, officers, directors, employees, nor the interest holders of the Debtor shall be discharged and released from liability, if any, for claims and debts arising under or in connection with the Debtor or this Subchapter V Case and/or otherwise addressed and/or treated in this Plan. **However, absent further Court order upon notice and hearing, the exclusive remedy for payment of any claim or debt addressed in this Plan, so long as the Plan is not in default, shall be the Plan and all parties classified in and under Articles III and IV herein are enjoined from taking any action inconsistent herewith, including, but not limited to, any action to prosecute or collect any debt or claim against any guarantor, insider, officer, director, employee or interest holder; provided however, that all**

---

[6] Section 1191(b) provides:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a), other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Section 1191(c) and defines "fair and equitable" with respect to an unsecured creditor in relevant part:

> (2) As of the effective date of the plan—
>
> (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
>
> (B) the value of the property to be distributed under the plan in the 3-year period, so such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.
>
> (3)(A) The debtor will be able to make all payments under the plan; or
>
> (B) (i) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and
>
> (ii) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

11 U.S.C. § 1191(c)(2)–(3).

> **creditors shall retain the right to pursue any third party guarantor for any debts not addressed in this plan and the discharge under 11 U.S.C. § 1192 shall not apply to any third party guarantor.** To the extent necessary, any applicable statute of limitations against collection from any third party is specifically tolled from the period of time from the Petition Date until the date upon which the Debtor fails to cure any written notice of default as set forth in the Plan and/or any applicable loan documents. The immediately preceding sentence shall not be construed to apply to a landlord's rights against any party who assigned a lease who may remain liable under the lease under applicable law.

Plan, Art. X (emphasis added). In other words, if a creditor's claim is treated through the Plan, that creditor is prohibited from pursuing satisfaction of that claim from any other person, but only for the three-year term of the Plan or the date the Debtor defaults on Plan payments and fails to cure the default timely, whichever is first.[7] Thus, the Plan proposes temporary, non-debtor injunctions to facilitate the successful implementation of the Plan.

Citing the U.S. Supreme Court's holding in *Harrington v. Purdue Pharma L.P. (In re Purdue Pharma)*, 603 U.S. 204, 227 (2024), and the Fifth Circuit's recent opinion in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*, 132 F.4th 353 (5th Cir. 2025) [hereinafter *Highland II*], the UST and Woodvine object to the Debtor's Plan solely on the assertion that *Purdue Pharma* and *Highland II* prohibit the inclusion of temporary, non-consensual, non-debtor injunctions in a confirmed plan of reorganization. [ECF Doc. 293; ECF Doc. 294, ¶¶ 10–18; ECF Doc. 319].

---

[7] Iris holds an allowed unsecured claim in the amount of $610,829 for "Pre-petition lease obligations and lease rejection damages." Iris's claim is classified in Class 8 with general unsecured claims and will receive *pro rata* distributions from the Debtor's disposable income over the three-year Plan term. Iris asserts that it retains tort claims against one or more of the Debtor's directors and officers. It similarly objected to the Plan with the UST and Woodvine, [ECF Doc. 576], but withdrew its objection in open court after negotiating language with the Debtor confirming and stating more plainly that it may pursue any claim against the Debtor's directors and officers that is not treated by the terms of the Plan.

**A. The Supreme Court's Holding in *Purdue Pharma* Does Not Enjoin Bankruptcy Courts from Confirming Plans Containing Temporary, Non-Consensual, Non-Debtor Injunctions.**

As observed recently by a colleague, the Supreme Court in its *Purdue Pharma* opinion explicitly noted that it was ruling on the narrow question of whether a bankruptcy court may effectively extend to non-debtors the benefits of a Chapter 11 discharge:

> Confining ourselves to the question presented, we hold only that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, *effectively seeks to discharge claims against a nondebtor without the consent of affected claimants*.

*In re Hal Luftig Co.*, 667 B.R. 638, 662–63 (Bankr. S.D.N.Y. 2025) (quoting *In re Purdue Pharma*, 603 U.S. at 227); *see also In re Purdue Pharma*, 603 U.S. at 215 ("The question we face thus boils down to whether a court in bankruptcy may effectively extend to *nondebtors* the benefits of a Chapter 11 discharge usually reserved for *debtors*."). This Court agrees with the *Hal Luftig* court that an "argument that *Purdue Pharma* prohibits bankruptcy courts from, as part of a plan, temporarily enjoining creditors' collection efforts against non-debtors is without merit." *Id*. at 663.

**B. The Fifth Circuit's Holding in *Highland II* Did Not Address Temporary, Non-Consensual, Non-Debtor Injunctions Entered at Confirmation To Facilitate the Successful Implementation of a Plan.**

Likewise, in the course of years-long litigation in the *Highland Capital Management, L.P.* case, the Fifth Circuit has been called upon to address the limits of exculpations and permanent injunctions that can be provided through a plan of reorganization. In 2022, the Fifth Circuit addressed an appeal that, in relevant part, challenged the scope of the non-debtor exculpation provision in the debtor's confirmed plan. *See NexPoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re Highland Capital Mgmt., L.P.)*, 48 F.4th 419, 435–38 (5th Cir. 2022) [hereinafter *Highland I*]. The confirmed plan purported to provide a permanent release of liability, that is, an

6

exculpation, from post-petition lawsuits not arising from gross negligence, bad faith, or willful or criminal misconduct for the debtor, its employees, independent directors, and Chief Executive Officer; the reorganized debtor; an affiliated third-party entity; the unsecured creditors' committee and its members; trusts established through the plan as well as the trustees and board members of those trusts; and all estate professionals. *See id*. at 435, 438. Citing its prior holdings in *Bank of New York Trust Co., N.A. v. Official Unsecured Creditors' Committee (In re Pacific Lumber Co.)*, 584 F.3d 229 (5th Cir. 2009) (identifying the limited bases for exculpating non-debtors) and *Hilal v. Williams (In re Hilal)*, 534 F.3d 498 (5th Cir. 2008) (recognizing a limited qualified immunity to bankruptcy trustees), as well as the plain text of 11 U.S.C. § 524(e),[8] the Fifth Circuit limited the exculpatory provision in the confirmed plan to the debtor, the unsecured creditors' committee and its members, and the independent directors. *See Highland I*, 48 F.4th at 437–38.

The *Highland I* court also addressed appellants' objection to the plan's open-ended injunction and gatekeeper provisions:

> The Plan's Injunction Provision, for its part, broadly enjoined certain persons and entities who held claims against or equity interests in Highland Capital (the "Enjoined Parties") from "taking any actions to interfere with the implementation or consummation of the Plan." It also specifically prohibited the Enjoined Parties from suing, enforcing orders, or asserting rights of setoff so as to recover from Highland Capital or affect Highland Capital's property. Then, in its Gatekeeper Clause, the provision implemented an injunction prohibiting the Enjoined Parties from taking specific actions against the "Protected Parties," stating:
>
>> [N]o Enjoined Party may commence or pursue a claim or cause of action of any kind against any Protected Party that arose or arises from or is related to the Chapter 11 Case, the negotiation of the Plan, the administration of the Plan or property to be distributed under the Plan, the wind down of the business of the Debtor or Reorganized Debtor, the administration of the Claimant Trust or the Litigation Sub-Trust, or the transactions in furtherance of the foregoing

---

[8] Section 524 of the Bankruptcy Code governs the effect of a discharge obtained through a bankruptcy case. Section 524(e) provides that, with limited exceptions found in § 524(a)(3), "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

7

> without the Bankruptcy Court (i) first determining, after notice and a hearing, that such claim or cause of action represents a colorable claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Protected Party and (ii) specifically authorizing such Enjoined Party to bring such claim or cause of action against any such Protected party[.]

*Highland II*, 132 F.4th 353, 355–56 (5th Cir. 2025). The plan defined "Protected Parties" extremely broadly to include numerous non-debtors. *See id*. at 356. Appellants objected to the plan's injunction provision as vague and the gatekeeper provision as overbroad. *See Highland I*, 48 F.4th at 438. The *Highland I* court held that "Appellants' primary contention—that the Plan's injunction 'is broad' by releasing non-debtors in violation of § 524(e)—is resolved by our striking the impermissibly exculpated parties." *See id*. The *Highland I* court further held that the injunction enjoining certain parties from "taking any actions to interfere with the implementation or consummation of the Plan" is not overbroad or vague because "the Plan defined what constitutes interference: (i) filing a lawsuit, (ii) enforcing judgments, (iii) enforcing security interests, (iv) asserting setoff rights, or (v) acting in 'in any manner' not conforming with the Plan." *See id*. at 438–39. Appellants' objection to the gatekeeping provision concerned only that it "impermissibly extends to unrelated claims over which the bankruptcy court lacks subject-matter jurisdiction." *Id*. at 439. Recognizing that "[c]ourts have long recognized bankruptcy courts can perform a gatekeeping function," the *Highland I* court rejected the appellants' argument, holding that its own precedent required it to

> le[ave] to the bankruptcy court, faced with pre-approval of a claim, to determine whether it ha[s] subject matter jurisdiction over that claim in the first instance. . . . In other words, we need not evaluate whether the bankruptcy court would have jurisdiction under every conceivable claim falling under the widest interpretation of the gatekeeper provision. We leave that to the bankruptcy court in the first instance.

*Id*.

The Fifth Circuit remanded the case to the bankruptcy court to conform the plan to its ruling. In 2025, certain parties were granted leave to appeal to address "whether the bankruptcy court erred in failing to narrow the definition of 'Protected Parties' used in the Gatekeeper Clause coextensively with its narrowing of the definition of 'Exculpated Parties' used in the Exculpation Provision." *Highland II*, 132 F.4th at 357. The *Highland II* court went to lengths to clarify why its holding in *Highland I* narrowed both the exculpation clause in the plan as well the gatekeeper provision of the plan in the same manner. *See id.* at 358–62. In sum, the *Highland II* court held:

> The clear weight of Supreme Court and Fifth Circuit precedent dictates our holding: that a proper reading of *Highland I* requires that the definition of "Protected Parties" used in the Plan's Gatekeeper Clause be narrowed coextensively with the definitions of "Exculpated Parties" used in the Exculpation Provision. Any other reading of *Highland I* would improperly grant the bankruptcy court authority to enforce what is perhaps the broadest gatekeeper injunction ever written into a bankruptcy confirmation plan. Such authority is patently beyond the power of an Article I court under § 105.

*Id.* at 362. The *Highland II* court thus reversed the bankruptcy court in part and remanded the case to revise the Plan's definition of "Protected Parties" contained in the gatekeeping provision to comport with the definition of "Exculpated Parties" contained in the exculpation clause, that is, "(i) the Debtor; (ii) the Independent Directors, for conduct within the scope of their duties; (iii) the Committee; and (iv) the members of the Committee in their official capacities, for conduct within the scope of their duties." *Id*.

In sum, *Highland II* clarified and affirmed the scope of its *Highland I* decision. But *Highland II* was not asked to and did not address temporary, non-consensual, non-debtor injunctions entered at confirmation to facilitate successful implementation of a plan.

### C. Neither *Purdue Pharma* Nor *Highland II* Disturbed the Fifth Circuit's Recognition of Temporary, Non-Consensual, Non-Debtor Injunctions in *In re Zale Corp.*

As discussed above, the Supreme Court's holding in *Purdue Pharma* focused on the narrow question of whether a bankruptcy court may effectively extend to non-debtors the benefits of a

9

Chapter 11 discharge and did not address the propriety of temporary, non-consensual, non-debtor injunctions issued through plan confirmation. *Highland II* focused exclusively on the bankruptcy court's gatekeeping powers over claims against non-debtors. In doing so, it reaffirmed its long-held stance that § 105(a) of the Bankruptcy Code cannot be used inconsistently with § 524(e) and provide non-consensual third-party releases and permanent injunctions:

> The Supreme Court and this court have definitively held that bankruptcy courts may not approve a confirmation plan that non-consensually releases non-debtors from liability related to a bankruptcy proceeding. They have also recognized that bankruptcy injunctions, though not in themselves releases, similarly act to shield persons and entities from liability and therefore may not be entered to protect non-debtor not legally entitled to release.
>
> "Although we interpret [11 U.S.C.] § 105 liberally" to allow bankruptcy courts a range of powers, any action a bankruptcy court takes "must be consistent with the rest of the Bankruptcy Code." *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995) (internal citations omitted). Notably, any bankruptcy court action must square with the Bankruptcy Code's edict that "discharge of a debt of the debtor does not affect the liability of any other entity on . . . such debt." 11 U.S.C. § 524(e); *see, e.g.*, *In re Coho Res., Inc.*, 345 F.3d 338, 342–43 (5th Cir. 2003); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 229 (5th Cir. 1997); *In re Edgeworth*, 993 F.2d 51, 53–54 (5th Cir. 1993).
>
> In accordance with this principle, the Supreme Court held recently in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), that the Bankruptcy Code "does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of the affected claimants." *Id*. at 227. Even before *Purdue Pharma*, this court had held the same: that any provision that non-consensually releases non-debtor from liability for debts and/or conduct, and any injunction that acts to shield non-debtors from such liability, must be struck from a bankruptcy confirmation plan. *See, e.g.*, *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) (Fifth Circuit case law "seem[s] broadly to foreclose non-consensual non-debtor releases and permanent injunctions); *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1059, 1061–62 (5th Cir. 2012); *In re Zale Corp.*, 62 F.3d at 760 ("[W]e must overturn a § 105 injunction if it effectively discharges a nondebtor.").

*Highland II*, 132 F.4th at 358–59.

But nothing in *Highland II* appears to have disturbed the Fifth Circuit's recognition of the use of temporary, non-consensual, non-debtor injunctions found in *Feld v. Zale Corp. (In re Zale*

10

*Corp.)*, 62 F.3d 746 (5th Cir. 1995), a seminal case in the Fifth Circuit relied upon by numerous panels to date to foreclose non-consensual, non-debtor releases and permanent injunctions. *See, e.g.*, *Ad Hoc Grp. of Vitro Noteholders v. Vitro S.A.B. de C.V. (In re Vitro S.A.B. de C.V.)*, 701 F.3d 1031, 1059 (5th Cir. 2012); *Bank of N.Y. Tr. Co., N.A. v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 253 (5th Cir. 2009). After holding that a permanent injunction issued pursuant to § 105(a) of the Bankruptcy Code effectively—and thus impermissibly under § 524(e)—discharges the debt of a non-debtor, the *Zale Corp.* court acknowledged that "a temporary stay prohibiting a creditor's suit against a nondebtor . . . during the bankruptcy proceeding may be permissible to facilitate the reorganization process in accord with the broad approach to nondebtor stays under § 105(a)." 62 F.3d at 760 (quoting *Landsing Diversified Props.–II v. First Nat'l Bank & Tr. Co. of Tulsa (In re W. Real Estate Fund, Inc.)*, 922 F.2d 592, 601 (10th Cir. 1990)). The court provided guidance to bankruptcy courts on the "unusual circumstances" under which a § 105(a) temporary, non-consensual, non-debtor injunction could issue:

> The impropriety of a permanent injunction does not necessarily extend to a temporary injunction of third-party actions. Such an injunction may be proper under unusual circumstances. These circumstances include 1) when the nondebtor and the debtor enjoy such an identity of interests that the suit against the nondebtor is essentially a suit against the debtor, and 2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization. When either of these circumstances occur, an injunction may be warranted.

*Id.* at 761 (internal citations omitted). The *Zale Corp.* court noted supporting cases identifying examples of "unusual circumstances" warranting temporary injunctions: *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993) ("Such circumstances usually include when the debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's reorganization."); *S.E.C. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992) ("In bankruptcy cases, a court may enjoin a creditor from suing a third party,

11

provided the injunction plays an important part in the debtor's reorganization plan."); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1003–06 (4th Cir. 1986) (stating that a § 105 injunction may be appropriate where proceeding would have an adverse impact on the debtor's ability to reorganize or deplete property of estate).

Thus, although dicta, the *Zale Corp.* court clearly recognized that circumstances may arise in a bankruptcy case justifying the issuance of a temporary injunction of non-debtor actions through the plan confirmation process. This Court finds that *Zale Corp.* continues to be a valid legal proposition. Therefore, this Court overrules Woodvine's and the UST's objections to the Debtor's Plan to the extent they assert that the holdings in *Purdue Pharma* or *Highland II* ban outright temporary, non-consensual, non-debtor injunctions issued entered at confirmation to facilitate the successful implementation of a plan.

**D. The Debtor Has Satisfied the *Zale Corp.* "Unusual Circumstances" Test As Well As the Traditional Factors Governing the Issuance of Temporary Injunctions.**

At trial, the Debtor presented two witnesses and documentary evidence. The UST's presentation of evidence was limited to cross-examination of the witnesses. Woodvine presented no testimonial or documentary evidence. Based on the record before the Court, the Court finds the following facts, the majority of which are uncontested:

- Donald Moore is the Chief Executive Officer and managing member of the Debtor; he will continue to manage the Debtor's day-to-day operations post-confirmation and ensure that the Debtor will perform under the Plan and make all Plan payments. *See* Debtor Ex. 6, ¶¶ 1, 17, 20 & 34.

- Moore guaranteed payment of the prepetition debts of the Debtor. *See* Debtor Ex. 6, ¶ 19.

- Robert Miller, a part-owner of the Debtor, provided significant capital to the Debtor prepetition and guaranteed payment of the prepetition debts of the Debtor. *See* Debtor Ex. 6, ¶¶ 18–20.

- Miller's affiliated company, Captec Financial Holdings Corp. ("Captec") provided capital to the Debtor prepetition and guaranteed payment of certain of the prepetition debts of the Debtor. *See* Debtor Ex. 6, ¶¶ 18–19.

- Patrick L. Beach serves as Captec's Chief Executive Officer and serves as a manager on the Debtor's Board of Managers; Beach has provided capital to the Debtor prepetition and guaranteed payment of the prepetition debts of the Debtor. *See* Debtor Ex. 6, ¶¶ 18–20.

- The Plan proposes 36 months of payments generated by operations to creditors with balloon payments at Month 36 to pay off the balance of unpaid secured debt, tax debt, and administrative claims. *See* Debtor Ex. 6, ¶ 20; Debtor Ex. 5, ¶ 9; Hr'g Tr. Min. 10:13:34–10:37:27 (Apr. 23, 2025).

- The Debtor must fund the balloon payments at the end of the three-year Plan term by refinancing outstanding amounts due under the Plan under one new loan. *See* Debtor Ex. 6, ¶ 20; Hr'g Tr. Min. 10:13:34–10:37:27.

- The financial commitment and backing of Moore, Miller, Beach, and Captec (the "Insiders") is required to obtain favorable terms for refinancing or to refinance at all. *See* Debtor, Ex. 6, ¶ 20; Hr'g Tr. Min. 10:13:34–10:37:27.

- If Woodvine files suit and/or successfully pursues any of the Insiders to enforce their guaranties of the Debtor's debts, the Insiders would not be able to support the Debtor in refinancing the balance of its debt to make the balloon payments to creditors at Month 36 as required by the Plan. *See* Debtor, Ex. 6, ¶ 20; Hr'g Tr. Min. 10:13:34–10:37:27.

Given those findings, and particularly the fact that each of the Insiders has guaranteed payment of the prepetition debts of the Debtor, the Court finds that the Insiders and the Debtor enjoy an identity of interest such that a suit against any of the Insiders is essentially a suit against the Debtor. Further, as the Chief Executive Officer and day-to-day manager of the Debtor, Moore is vital to the Debtor's successful reorganization; to allow Woodvine to proceed with a guaranty action against Moore would divert the time, attention, and resources of the Debtor's executive and manager from effecting the Debtor's reorganization efforts. Equally so, the Debtor's ability to refinance the balance of its unpaid debts at the end of the three-year Plan term is crucial to its ability to reorganize; a guaranty suit lodged by Woodvine against any of the Insiders could negatively affect the strength of any guaranty provided and discourage any future infusion of

capital or financing, thus adversely impacting the Debtor's reorganization Plan and creditor recoveries. The Court therefore finds that the Debtor has satisfied the *Zale Corp.* "unusual circumstances" test warranting the issuance of a temporary, non-debtor injunction to facilitate the successful implementation of the Plan. *See* 62 F.3d 746, 761 (5th Cir. 1995); *see also Neutra, Ltd. v. Terry (In re Acis Capital Mgmt., L.P.)*, 604 B.R. 484, 525–26 (N.D. Tex. 2019); *In re Bernhard Steiner Pianos USA, Inc.,* 292 B.R. 109, 116–17 (Bankr. N.D. Tex. 2002); *In re Seatco, Inc.*, 257 B.R. 469, 477 (Bankr. N.D. Tex. 2001).

In addition to satisfying the "unusual circumstances" test, "[w]hen a bankruptcy court issues a temporary injunction under § 105(a) as part of a confirmed plan, the bankruptcy court must still consider the four-prong preliminary injunction test." *In re Acis Capital Mgmt., L.P.*, 604 B.R. at 528 (citing *In re Seatco*, 257 B.R. at 477). Those factors are (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) the threatened injury if the injunction is denied outweighs the threatened harm the injunction may cause to the party opposing the injunction, and (4) the issuance of an injunction will not disserve the public interest. *See, e.g.*, *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009); *Commonwealth Oil Ref. Co. v. U.S.E.P.A. (In re Commonwealth Oil Ref. Co.)*, 805 F.2d 1175, 1188–89 (5th Cir. 1986).

Here, all factors are met. "The first factor, when applied to a temporary plan injunction, turn on whether the reorganization plan is likely to succeed." *In re Acis Capital Mgmt., L.P.*, 604 B.R. at 528. No party in interest objected to feasibility of the Plan. The record shows that the Debtor has downsized its corporate footprint, has provided for reasonable contingencies including a working capital reserve, and presented realistic and attainable business projections. *See* Debtor Ex. 5, ¶ 10; Hr'g Tr. Min. 10:37:36–10:49:49 (Apr. 23, 2025). This Court already determined at

14

the confirmation hearing that the Plan—including the expectation that the Debtor will refinance its outstanding debt with the help of the Insiders at Month 36—is feasible. That finding supports a conclusion that the Plan is substantially likely to succeed. *See In re Acis Capital Mgmt., L.P.*, 604 B.R. at 528–29. Moreover, the record reflects that the opportunity for this Debtor to successfully reorganize is seriously jeopardized if Woodvine is not temporarily restrained from its efforts to collect the amounts that it will be paid under the Plan from any of the Insiders pursuant to their guaranties. Thus, the Debtor faces a substantial threat of irreparable injury without the issuance of the temporary injunction. *See id*. at 529.

Under the Debtor's confirmed Plan, Woodvine will be paid in full within the Plan's three-year term. But Woodvine is free right now to pursue any amounts owing to it pursuant to the guaranties that are **not** being paid under the Plan. And if the Debtor defaults on its Plan payments at any time during the three-year Plan term and fails to cure the default timely, the injunction expires and Woodvine is then free to pursue guaranty actions against the Insiders for the full amounts owed on the debt. The only harm to Woodvine is that it may be forced to accept Plan payment terms that it does not like. That harm is minimal compared to the harm the Debtor faces if the temporary injunction is not granted: the Debtor forfeits its ability to reorganize. *See id*.; *In re Seatco*, 257 B.R. at 477.

Finally, the Court finds that issuance of a temporary injunction does not disserve the public interest. "The public has an interest in allowing businesses to reorganize instead of liquidate." *In re Acis Capital Mgmt., L.P.*, 604 B.R. at 529. This Court is also cognizant that, because the fortunes of the Debtor and the Insiders are inextricably intertwined, issuance of a temporary injunction against Woodvine also serves to protect the Debtor's numerous other creditors and their rights to receive equitable distributions under the Plan. Thus, temporarily enjoining Woodvine

from proceeding with guaranty actions for debt that is being paid through the Plan "is not a distortion of Congressional purpose." *Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)*, 963 F.2d 855, 862 (6th Cir. 1992).

For the foregoing reasons,

**IT IS ORDERED** that the temporary injunction provided in Article X of the confirmed Plan to facilitate the successful implementation of the Plan is properly issued pursuant to 11 U.S.C. §§ 105(a) and 1123(b)(6).[9]

**IT IS FURTHER ORDERED** that the Debtor shall serve this Order via first-class U.S. Mail on the required parties who will not receive a copy through the Court's CM/ECF system pursuant to the Federal Rules of Bankruptcy Procedure, this Court's Local Rules, and any Order limiting service in this case, and file a certificate of service to that effect within three days.

New Orleans, Louisiana, this 13th day of May, 2025.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

---

[9] Section 1123(b)(6) provides that a plan of reorganization may "include any other appropriate provision not inconsistent with the applicable provisions of this title."